# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## WACO DIVISION

|  |  |
|---|---|
| SYNKLOUD TECHNOLOGIES, LLC, | Civil Action No. 6:19-cv-00526-ADA |
| PLAINTIFF, |  |
| v. |  |
| DROPBOX, INC., | **JURY TRIAL DEMANDED** |
| DEFENDANT. |  |

**PLAINTIFF SYNKLOUD TECHNOLOGIES, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................3

III.  LEGAL STANDARD ...........................................................................................4

IV.   THE COURT SHOULD NOT TRANSFER THIS ACTION TO THE NORTHERN
      DISTRICT OF CALIFORNIA ...........................................................................5

      A.    The Private Factors Weigh Against Transfer..........................................5

            1.    Ease of Access to Proof Weighs Against Transfer .....................5

                  a.    This District Has Equal Access to Documentary and Physical
                        Evidence..............................................................................5

                  b.    This District Is Equally Convenient, If Not More, to the Party and
                        Non-Party Witnesses............................................................8

            2.    The Availability of Compulsory Process in WDTX Weighs Against
                  Transfer.....................................................................................13

                  a.    WDTX is More Convenient for Willing Witnesses.................14

                  b.    Other Practical Problems Weigh Against Transfer.....................15

      B.    The Public Factors Weigh Against Transfer............................................16

            1.    Faster Disposition in this District Weights Against Transfer ...................16

            2.    This District's Localized Interest Weighs Against Transfer....................16

            3.    Familiarity with Governing Law Factor is Neutral...................................17

            4.    Avoidance of Conflict of Laws Factor is Neutral.....................................17

V.    CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
  358 F.3d 337 (5th Cir. 2004) ..................................................................5

*Adaptix, Inc. v. Cellco Partnership*,
  No. 6:15-CV-0045 (E.D. Tex. Aug. 12, 2015) ......................................14

*In re Apple Inc.*,
  743 F.3d 1377, 1379 (Fed Cir. 2014).......................................................7

*Arielle, Inc. v. Monster Cable Prod., Inc.*,
  No. 2:06-CV-00382, 2007 WL 951639 (E.D. Tex. Mar. 26, 2007) ........13

*Auto-Dril, Inc. v. Pason Sys. USA Corp.*,
  No. 6:15-CV-00093, 2015 WL 12780779 (W.D. Tex. June 29, 2015) .................13

*Barnes & Noble Booksellers, Inc. v. DDR DB SA Ventures, LP*,
  No. 5:05-CV-00002, 2005 WL 1279192 (W.D. Tex. May 5, 2005). ........7

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*,
  No. 6:12-CV-00100, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013)............7

*Farmers Select, LLC v. United Motor Freight, Inc.*,
  No. EP-07-CV-342-DB, 2008 WL 5351731 (W.D. Tex. Dec. 19, 2008) ..............13

*Fintiv v. Apple*,
  No. 6:18-CV-00372, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ........6, 11, 16

*Healthpoint, Ltd. v. Derma Scis., Inc.*,
  939 F. Supp. 2d 680 (W.D. Tex. 2013)...................................................13

*MV3 Partners LLC v. Roku, Inc.*,
  No. 6:18-CV-00308 (W.D. Tex. June 25, 2019) ..................................7, 9

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
  No. 6:17-CV-00549, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018)............15, 16, 17

*Uniloc v. Box*,
  No. 1:17-CV-00754, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ........15

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................1, 4, 5, 15

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................................1, 4

**Other Authorities**

Fed. R. Civ. P. 32(a)(4)...................................................................................................12

Plaintiff SynKloud Technologies, LLC ("SynKloud" or "Plaintiff") hereby opposes Defendant Dropbox, Inc.'s ("Dropbox" or "Defendant") Motion (ECF No. 19, "Mot.") to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

## I.     INTRODUCTION

Dropbox fails to satisfy its heavy burden, as the party seeking transfer, of proving that the Northern District of California ("NDCA") is a "clearly more convenient" forum than the Western District of Texas ("WDTX") as required by the Fifth Circuit. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008). Dropbox downplays its presence in this District, misstates facts regarding the location of SynKloud's witnesses and sources of proof, and speculates about the convenience of party and non-party witnesses. Dropbox focuses mainly on its own alleged inconvenience. Stripped of Dropbox's speculation, Dropbox has failed to meet its burden justifying transfer.

First, Dropbox has a substantial presence in this District. By its own admission, Dropbox maintains over 200 employees here, including engineers and managers representing almost every team within the Company, such as support, sales and marketing. Dropbox holds a "Developer Build Day" in Austin where it works with Austin-based startups to build products that integrate with Dropbox. Dropbox chose Austin as its second office location after its headquarters in San Francisco, and has advertised plans to expand its Austin office, and currently has numerous job openings for this office. And, to host and transmit its customers' data in the United States, Dropbox uses and maintains a datacenter located in Texas.

Second, with respect to sources of proof, Dropbox has failed to specifically identify any Dropbox employee or document that cannot be produced in this District. For example, Dropbox has not explained why it could not produce the source code for the accused features in this District,

such as at its Austin office or those of its litigation counsel.  Besides source code, Dropbox essentially states that the relevant documents are in electronic form, making them as accessible in this District as any other.

Third, for its own party witnesses who reside in NDCA, Dropbox's sole declarant states that the Dropbox employees in Austin are "primarily" involved in human resources, customer assistance, and sales roles.  Publicly available information, however, shows that Dropbox's use of the word "primarily" was carefully crafted so as not to deny the fact that there are potential witnesses in this District.   For example, public data shows numerous personnel from the Austin office who will likely have relevant information:  Austin Sims and Chris Friechrich in Product Management, Liz Armistead in Global Branding, Josh Glazebrook in Engineering, and Michelle Adams, head of sales. All these employees can provide critical testimony supporting SynKloud's infringement (both direct and indirect) and damages theories.  Similarly, SynKloud's key party witnesses reside in New York and Virginia, who find this District more convenient in terms of travel and costs of accommodating than NDCA.  None of SynKloud's witnesses reside in the Northern District of California.

Lastly, with respect to non-party witnesses, Dropbox only identifies two witnesses who would not fall under this Court's subpoena power: Mr. Ted Tsao (the named inventor) and Mr. Li (a lawyer who previously corresponded with Dropbox).  Mr. Tsao has provided a declaration (filed herewith) stating that he agrees to travel to this District to testify as needed, negating the relevance of his distance from Texas and the availability of compulsory process as a factor favoring transfer.  And Mr. Li, as prior counsel, will likely have no non-privileged discoverable information.

In sum, Dropbox has not and cannot meet the heavy burden to show that the NDCA is clearly more convenient than this District.  As such, Dropbox's Motion should be denied.

## II.     STATEMENT OF FACTS

On September 6, 2019, SynKloud filed suit against Dropbox for infringing United States Patent Nos. 8,606,880 ("the '880 Patent"); 8,856,195 ("the '195 Patent"); 8,868,690 ("the '690 Patent"); 9,219,780 ("the '780 Patent"); 9,239,686 ("the '686 Patent"); and 10,015,254 ("the '254 Patent") (collectively, the "Patents-in-Suit").  ECF No. 1. On the same day, SynKoud filed suit against Adobe also in this District for infringing the same Patents-in-Suit.  *See* Case No. 6:19-cv-00527-ADA.

SynKloud is a research and intellectual property licensing company incorporated and located in Delaware that focuses on innovations in cloud computing.  ECF No. 3; *See also* accompanying Declaration of Robert Colao ("Colao Decl."), ¶3.  SynKloud acquired the current Patents-in-Suit in December of 2018 directly from STTWebOS, founded by Ted Tsao, who is the sole inventor of the technology at issue. Colao Decl., ¶7.  The Patents-in-Suit, generally speaking and without limitation, involve cloud storage and automated transfer of files between two remote locations, i.e. between a first remote source located anywhere on the internet and a second remote storage location associated with a user without requiring a download on a local device.  ECF No. 1 at ¶¶18-23. SynKloud followed up on STTWebOS attempts to license its technology to Dropbox to no avail.  ECF No. 1 at ¶¶10-12.  After exhausting its attempts, SynKloud filed suit in this District on September 6, 2019.  *Id.*

SynKloud's principal member and President, Robert Colao, resides in New York, NY. Colao Decl., ¶4.  Mr. Colao is the most knowledgeable person to testify regarding SynKloud's licensing efforts of the Patents-in-Suit and any other company related topics.  Colao Decl., ¶3. This District is a more convenient location for him in terms of geographic proximity and cost of travel compared to NDCA.  *Id.*  In addition to travel costs, the cost of overnight stay with hotel

accommodations and meals in NDCA are more than double than those equivalent costs in this District.  *See* accompanying declaration of John E. Lord ("Lord Decl."), ¶18, Ex. Q[1].  Such travel and accommodation costs would add up for any SynKloud witnesses at any hearings or trial including expert witnesses.  *Id.*  None of SynKloud's members, directors, and officers reside in NDCA, and none of the relevant documents are located there.  Colao Decl., ¶¶5-6.

Dropbox's accused products and services are available world-wide and are sold and used in this District.  Dropbox also uses and maintains a datacenter in Texas.  Ex. A.  Dropbox specifically chose Austin to build out its second US location and has stated "When we began looking for our second US location, Austin was the obvious choice. The city boasts vibrant tech and art communities, paired nicely with a healthy dose of Texan hospitality. From here, we're building out our sales and channel, customer experience and people teams for the Americas."  Ex. B.  Dropbox has further expanded the Austin office, and has job postings seeking more employees and incorporates a local Developer Build Day to work with Austin-based start-ups.  Exs. C, R, O. It currently maintains about 200-250 employees, including employees in software engineering, customer assistance, marketing and sales.  ECF No. 19-2, ¶10; Ex. D.

## III.   LEGAL STANDARD

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.  28 U.S.C. § 1404(a). The party moving for transfer carries a "heavy burden" to demonstrate that proposed transferee court is clearly more convenient.  *In re Volkswagen*, 545 F.3d at 314, n.10.

---

[1] Unless otherwise noted, all exhibits are attached to the Lord Declaration.

The Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 545 F.3d at 314.   The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*   A plaintiff's selection of venue is entitled to deference.  *Id.* at 314 ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, **the plaintiff's choice should be respected**.") (emphasis added).

## IV.   THE COURT SHOULD NOT TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA

### A.  The Private Factors Weigh Against Transfer

#### 1.   Ease of Access to Proof Weighs Against Transfer

This factor weighs against transfer because the sources of proof, i.e. both documents and witnesses, are either equally accessible in WDTX and NDCA, or more accessible in this District.

##### a.   This District Has Equal Access to Documentary and Physical Evidence

To support this factor, Dropbox makes general statements about where the relevant Dropbox documents *were created*.  *See, e.g.,* Mot. at 4 ("the documents related to the accused functionality, including technical documents, marketing materials, and financial records *were*

*created* in San Francisco and Seattle") (emphasis added); Mot. at 7 ("Also, Dropbox's electronic documents describing the design and operation of the accused functionality *were created* in the Northern District of California . . . were likewise *created* in San Francisco") (emphasis added)). The relevant inquiry, however, looks at where the documents and evidence are stored, not created. *Fintiv v. Apple*, 2019 WL 4743678 at *2 (W.D. Tex. Sept. 10, 2019) ("In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored.")

Dropbox's failure, or reluctance, to identify the location of the relevant documents is not surprising given that the documents likely reside in electronic format. Dropbox confirms as much in its motion by citing to its "electronic documents." Mot. at 7. As such, these documents can just as easily be accessed from its Austin office, as from its San Francisco office. This is especially true here because Dropbox is a company that provides global access to files through "cloud storage." Ex. E. Indeed, Dropbox advertises that "With the Dropbox app, you can share your files from anywhere" (https://www.dropbox.com/features/cloud-storage, accessed on December 9, 2019). Thus, Dropbox cannot assert that its own internal documents are not accessible in this District.

Additionally, Dropbox does not affirmatively state it contains any hard-copy documents; rather, Dropbox's witness states "to the extent there are any hard copy documents . . ." ECF No. 19-2 at ¶9. Thus, there is no evidence that any hard copy documents will need to be delivered from San Francisco to this District.

Further, Dropbox's generic statements about the contents of documents created in San Francisco are too vague to favor transfer. *See generally* Mot. at 6-8. Courts have held that general statements "fail to show that transfer would make access to sources of proof more or less

convenient for the parties." *See, e.g., Core Wireless Licensing, S.A.R.L. v. Apple Inc.*, 2013 WL 682849, at *3 (E.D. Tex. Feb. 22, 2013) (defendant's statement that "virtually all [defendant's] business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused Products are located in or near Cupertino" was too vague to factor in the transfer analysis), *aff'd In re Apple Inc.,* 743 F.3d 1377, 1379 (Fed Cir. 2014).

Without identifying the implicated software features in the accused products and services, Dropbox broadly asserts that all the relevant source code is housed and controlled in San Francisco. Mot. at 4. Even for the source code, however, Dropbox has not asserted and likely cannot assert that its source code is not accessible in Austin. Regardless, any burden of inspecting source code, will be borne by SynKloud, not Dropbox. And it appears that Dropbox will only make its code available in San Francisco, regardless of venue. Mot. at 4 ("it [Dropbox] will seek a protective order in this case that permits inspection only at its counsel offices near San Francisco"). Thus, SynKloud and its experts will have to bear the burden of travelling to San Francisco to inspect the code regardless of venue.

Thus, as Dropbox bears the burden, with all inferences in SynKloud's favor, access to documentary proof weighs against transfer. The "location of documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking,'" and there is no indication such is the case here. *Barnes & Noble Booksellers, Inc. v. DDR DB SA Ventures, LP*, No. 5:05-CV-00002, 2005 WL 1279192, at *2 (W.D. Tex. May 5, 2005). *See also MV3 Partners LLC v. Roku, Inc.,* No. 6:18-cv-00308-ADA (W.D. Tex. June 25, 2019) ("finally, most evidence today is provided in electronic format and can be made available at the click of a mouse").

> **b.** **This District Is Equally Convenient, If Not More, to the Party and Non-Party Witnesses**

Dropbox downplays its presence in this District and its relevance to the accused products and/or services.  Listed below are Dropbox employees located in this District who appear, from publicly available information, to possess relevant knowledge about one or more aspects of the accused products and services:

| Name | Dropbox Role | Current location | Relevant Knowledge |
|------|-------------|-----------------|-------------------|
| Chris Friedrich | Product Manager | Austin, Texas | Technical operation of Dropbox's desktop and mobile app clients; customer demand for the accused products and/or services |
| Austin Sims | Product Manager | Austin, Texas | Technical operation of Dropbox's desktop and mobile app clients; customer demand for the accused products and/or services |
| Josh Glazebrook | Software Engineer | Austin, Texas | Technical operation of Dropbox's desktop and mobile app clients; customer demand for the accused products and/or services |
| Rachel Belkin | Sales Manager | Austin, Texas | Sales, marketing and customer demand of accused products and/or services |
| Michelle Adams | Head of Sales and Customer Success | Austin, Texas | Sales, marketing and customer demand of accused products and/or services |
| Liz Armistead | Global Branding and Influencer | Austin, Texas | Branding and marketing of accused products and/or services |

*Chris Friedrich*, a Product Operations Manager at Dropbox, has worked for Dropbox for more than five years and appears to have extensive knowledge and experience with, among other things, identifying and resolving technical and other customer issues related to Dropbox's CX (Customer Experience) including "Desktop app" and "mobile app"—both of which fall within the

scope of the accused products and services in this case.  Ex. F, at 2–3.  Mr. Friedrich is also likely to have extensive knowledge about the accused seamless customer experience in accessing remote storage with ease features.  *See Id.*

*Austin Sims*, a Product Manager at Dropbox, has worked for Dropbox for more than two years and appears to have extensive knowledge and experience with, among other things, identifying and resolving file sharing and cloud storage technical and other customer issues related to Dropbox's CX (Customer Experience) including "Desktop app" and "mobile app"—both of which fall within the scope of the accused products and services in this case. Ex. G, at 2–3.

*Josh Glazebrook*, a Software Engineer in the Austin office, likely will have the relevant knowledge of internal engineering and design implementation details of the accused products and/or services.  Ex H.

*Rachel Belkin*, a Senior Enterprise Sales Manager at Dropbox since February 2017, appears to be responsible for Dropbox's sales strategy.  Ex. I.  Ms. Belkin is likely to have relevant and material knowledge about Dropbox's sales and marketing of the accused products and/or services.

*Michelle Adams*, as Head of Sales and customer success, will likely have the US based sales information, strategy, past, current and future predictions involving the accused products and/or services.  Ex. J.

*Liz Armistead*, as Global Branding and Influencer, will likely have the relevant knowledge regarding branding, marketing and sales efforts of the accused products and/or services.  Ex. K.

One component of this case concerns the "intent" element necessary for induced infringement.  ECF No. 1, ¶22.  Dropbox, like many Defendants defending an inducement claim, may argue that it did not actively encourage or assist the infringement of another.  Employees

involved in customer assistance, such as the employees identified above, will provide valuable testimony in this area. Same with damages, where many sales and customer support employees reside. Ex B. Thus, these witnesses undoubtedly will have knowledge relevant to at least SynKloud's indirect infringement and damages claims.

Further, many former Dropbox employees located in this District appear to have relevant and material knowledge of the accused products and/or services, including, for the example, the following:

| Name | Dropbox Role | Current Location | Relevant Knowledge |
|------|--------------|------------------|--------------------|
| Alex Carp | Software engineer (June 2015–August 2018) | Austin, Texas | Technical operation of Dropbox's desktop client data synchronization features |
| Mike Roeder | Software engineer (March 2013–June 2016) | Austin, Texas | Technical operation of data synchronization features of Dropbox products generally; technical operation user interfaces for data synchronization features. |
| Drew Betzer | Senior Account Executive (April 2014–June 2016) | Austin, Texas | Sales and marketing of the accused products and services generally; customer demand for the accused products and services |
| Meghan Sayers | Enterprise Account Executive (April 2016–April 2018) | Austin, Texas | Sales and marketing of the accused products and services generally; customer demand for the accused products and services |

**Alex Carp** was a software engineer at Dropbox for more than three years, where he "worked on the Dropbox client and Smart Sync" as well as for "Dropbox's infrastructure team working on systems to help Dropbox scale." Ex. L. Mr. Carp appears to have worked on the accused feature of remote file transfer from its inception through at least its widescale release in 2017. *Id.* Importantly, he is also likely to possess relevant and material knowledge of the

datacenter infrastructure supporting Dropbox's products, which are squarely within the scope of the asserted claims in this case. Dropbox operates such a datacenter in Texas. *See* Ex. A ("We have datacenter co-location facilities in California, Texas, and Virginia.").  Another example is that of **Mike Roeder**, a software engineer at Dropbox for three years who implemented technical features regarding Dropbox's user interface associated with accused remote file transfer.  Ex. S.

    **Drew Betzer** and **Meghan Sayers** are both former Dropbox employees who had sales and marketing roles within the company. Exs. M and N.  Mr. Betzer's responsibilities appear to have encompassed the "Dropbox for Business sync-and-share platform." Ex. M, at 2. And Ms. Sayers appears to have been responsible for significant sales activity to Dropbox's enterprise customers. Ex. N, at 2. They are both likely to have relevant knowledge regarding the issues in this case.

    Moreover, a recent Google Job listing search shows at least three engineering/technical positions are available at the Austin office, including a "Full Stack Software Engineer," a "Senior CX Software Engineer – Full Stack" and a "CX – Technical Support Specialist."  Ex. O.  CX stands for Customer Experience, which is one of the key accused features.  Whether the engineers or witnesses selected by Dropbox or SynKloud (and/or any other engineers in the Austin office) have more knowledge about the accused functionality at this time is unknown -- information asymmetry requires discounting Dropbox's assertions.  *See, e.g., Fintiv*, 2019 WL 4743678 at *4 ("Additionally, such a mechanical approach ignores the information asymmetry between the parties at this stage of the case, which unfairly handicaps the patentee/non-movant as it can only find potential witnesses using public information whereas the alleged infringer/movant has both public and confidential information.").

    Similarly, Dropbox cannot deny that it provides the accused products and/or services, and infringing features, specifically to customers in this District. When Dropbox filed its pre-IPO S-1

filing with the SEC on February 23, 2018, it specifically identified six marquee customers as "case studies." One of these six marquee customers is the Brandt company, one of Texas's largest construction services contractors and which has significant offices in every major city in Texas (including in both Waco and Austin).  Ex. P.

Dropbox's argument that Austin is merely a "satellite" office (Mot. at 10) with no relevant witnesses does not withstand scrutiny.  Ex D.  By its own admission, Dropbox's Austin office "represents almost ***every team*** within the Company" as shown in a YouTube video touting Dropbox's Austin office posted on Dropbox's website.  *Id.* (emphasis added).  While Dropbox does identify employees based out of San Francisco, it does not state that it will not call any Austin employee for trial or deposition. Dropbox summarily dismisses the notion that there may be potential witnesses in this District who have relevant information relating to the research, design, marketing, development, and sales of the accused products.  Instead Dropbox's sole declarant states that the Dropbox employees are "primarily" involved in human resources, customer assistance, and sales roles.  ECF No. 19-2 at ¶10.  Publicly available information as disclosed earlier, however, shows that Dropbox's assertion and use of the word "primarily" are carefully crafted so as not to deny the fact that there are potential witnesses in this District.  Exs. F-N, S.

Dropbox also fails to offer any particularized information that would enable the Court to ascertain how much weight is to be given to the claim of inconvenience to its employees, and fails to show how the testimony of these individuals is not cumulative or why they would be forced to travel to Texas at all, rather than be deposed wherever they reside. *See* Fed. R. Civ. P. 32(a)(4).

With respect to SynKloud, SynKloud is a Delaware company where its key members reside in New York and Virginia.  Colao Decl., ¶5.  Relevant SynKloud documents will be located in New York and Virginia.  *Id.*  None of its relevant information or witnesses are located in the

Northern District of California. *Id.* And it is far easier with geographic proximity and costs for accommodations for SynKloud to travel from Delaware or New York to Austin, than to the NDCA. Colao Decl., ¶6, Ex. Q. As such, this factor weighs against transfer.

### 2. The Availability of Compulsory Process in WDTX Weighs Against Transfer

The convenience of non-party witnesses, rather than employee witnesses, is the more important factor and accorded greater weight. *Farmers Select, LLC v. United Motor Freight, Inc.*, No. EP-07-CV-342-DB, 2008 WL 5351731, at *4 (W.D. Tex. Dec. 19, 2008). Further, the moving party must "specifically identify key witnesses and outline the substance of their testimony." *Arielle, Inc. v. Monster Cable Prod., Inc.*, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007).

Importantly, "[C]ourts, including courts within this district, have found this factor to be neutral 'where the parties have not alleged that non-party witnesses are unwilling to testify.'" *Auto-Dril, Inc. v. Pason Sys. USA Corp.*, No. 6:15-CV-00093, 2015 WL 12780779, at *3 (W.D. Tex. June 29, 2015); *see also Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 689 (W.D. Tex. 2013) ("[Movant] has not argued that compulsory process would be necessary to secure [third parties'] presence at trial. In the absence of such claims, this factor is neutral.").

Here, Dropbox identifies two potential non-party witnesses not within the subpoena power of this District: Mr. Tsao (the named inventor) and Mr. Li (a lawyer who previously corresponded with Dropbox). Mot at 8. Mr. Tsao, however, is willing to travel to this District for this case, which negates the relevance of their distance from Texas and the availability of compulsory process as a factor favoring transfer. *See* Declaration of Ted Tsao ("Tsao Decl."); *See also Arielle Inc.*, 2007 WL 951639, at *2 (convenience of witnesses did not support transfer where plaintiff provided affidavits stating that "key" witnesses are willing to travel to Marshall, Texas). Mr. Li is a lawyer who previously corresponded with Dropbox. (ECF No. 1 Ex. 1A.) Dropbox has access

-13-

to any non-privileged information that was shared by to Mr. Li.  Any internal discussions between Mr. Li and his client would not be available for discovery under the attorney-client privileged and attorney work product.  Hence, given that, first, Dropbox has not indicated that Mr. Li would be unwilling to testify in this District, and, second, has also failed to clarify how Mr. Li would have unprivileged source of information that is not already available to Dropbox, any alleged unavailability of Mr. Li as a non-party witness should be discounted.

Further, Dropbox provides no detail about the potential testimony of either of these witnesses, and has not said whether they will be deposed or called as trial witnesses.  *See Adaptix, Inc. v. Cellco Partnership, No.* 6:15-cv45, ECF No. 32 at 7 (E.D. Tex. Aug. 12, 2015) ("when parties simply name non-party witnesses subject to the subpoena power of a particular court without identifying the nature of the testimony or asserting, on a good faith basis, whether a party intends to depose or call a witness to trial, analysis of this factor is a futile and pointless exercise.").

Dropbox has identified only two non-party witnesses.  SynKloud has identified at least four non-party witnesses, i.e. former Dropbox employees, in Texas.  *See* above Section IV.A.1.b. Dropbox has also not given an indication that the two identified non-party witness would be unwilling to testify in this litigation.  SynKloud has submitted a declaration that shows that the inventor of the Patents-in-Suit, a non-party witness, is willing to testify in this District.  As such, this factor weighs against transfer.

### a.     WDTX is More Convenient for Willing Witnesses

SynKloud's key party witness will be its President Mr. Robert Colao. Mr. Colao resides in New York. Colao Decl., ¶3.  WDTX is closer to New York than San Francisco, and thus would be a more convenient location.

Dropbox summarily states that for all of its witnesses located in San Francisco or Seattle, NDCA is more convenient. But as noted above, publicly available information reveals that several Dropbox employees in Austin are likely to have information relevant to this case, including individuals having knowledge regarding engineering and sales as it relates to the accused functionality. The convenience of Dropbox's identified witnesses should not obscure or outweigh the convenience of SynKloud witnesses and SynKloud identified witnesses from this District. *See* above Section 1.A.4.b.

Further, while Dropbox provides exhibits showing travel times to support allegations that the NDCA is more convenient (*See* ECF No. 19-20 – 19-23), courts have noted that "airfare is only one factor in the cost of attendance: lodging and meals are likely to be significantly less expensive in Tyler than in Seattle. *Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, 2018 WL 4444097, at * 6 (E.D. Tex. Sept. 5, 2018). The same can be said here regarding lodging and meals in this District versus San Francisco. Ex. Q.

### b.        Other Practical Problems Weigh Against Transfer

Practical considerations include those related to judicial economy, including whether the there are multiple suits involving the same or similar issues that may create practical problems which weigh in favor of or against transfer. *See In re Volkswagen*, 545 F.3d at 315. Here, SynKloud has asserted the Patents-in-Suit against Adobe in this District. *See* Case No. 6:19-cv-00527-ADA. Adjudication of these actions by this Court, rather than in duplicative suits in multiple jurisdictions, raises the concern of duplicative actions or inconsistent rulings in different venues and serves the interest of judicial economy and weighs against transfer. *Id.*

Dropbox's reliance on *Uniloc* is misplaced. *Uniloc v. Box*, 2018 WL 2729202 (W.D. Tex. June 6, 2018). In *Uniloc,* the district court granted a motion to transfer after finding that the

-15-

practical problems weigh in favor of transfer.  There, however, Uniloc was currently litigating the validity of the only patent asserted in that case, the '228 patent, in NDCA, the proposed transferee court.  Thus, the parallel action in the transferee court weighed heavily in the transfer analysis. Here, SynKloud has not asserted these patents in NDCA; rather it has asserted them in this District against both Dropbox and Adobe.  Thus, this factor weighs against transfer.

**B.      The Public Factors Weigh Against Transfer**

**1.      Faster Disposition in this District Weights Against Transfer**

Court congestion weighs against transfer.  Here, in the Order Governing Proceedings, trial is scheduled to being 44-47 weeks after the Markman hearing.  ECF No. 21.  With the Markman hearing scheduled for 23 weeks after the CMC, and the CMC set for January 6, 2020, trial is set to start between April 19, 2021 and May 10, 2021.  Even assuming the later date, the time from filing (Sept. 6, 2019) to trial will be about 21 months.  This represents a 25% faster time than time-to-trial statistics in NDCA, based on statistics from a recent case.  *See Fintiv*, 2019 WL 4743678 at *7.  Considering the time expended here that could not be easily recaptured if this case were transferred, this factor weighs against transfer.  *Id.; see also Realtime*, 2018 WL 4444097 at *7. Transferring to NDCA would prejudice SynKloud by depriving it of its chosen forum and the reason why it chose this forum: speed and efficiency in patent infringement litigation.  Since the time to trial is faster in this District, this factor weighs against transfer.

**2.   This District's Localized Interest Weighs Against Transfer**

This District has a local interest because Dropbox has a large presence here. With regard to its Austin office, Dropbox has stated "When we began looking for our second US location, Austin was the obvious choice. The city boasts vibrant tech and art communities, paired nicely with a healthy dose of Texan hospitality. From here, we're building out our sales and channel,

-16-

customer experience and people teams for the Americas."  Ex. B.  Also, Dropbox is seeking to expand the Austin office, hire more employees, and incorporate a local Developer Build Day to work with Austin-based start-ups.  Exs. C, R, O.  Because of Dropbox's large presence in West Texas, and its expansion efforts, this District has a particularized local interest which weighs against transfer. *See Realtime*, 2018 WL 4444097 at *8 (finding factor neutral based on Amazon's facilities in this District, and despite Amazon's objection that such facilities were related to national sales and not the asserted technology, Court finding that Amazon affords itself of the laws and protections provided by this District).

### 3. Familiarity with Governing Law Factor is Neutral

SynKloud agrees with Dropbox that this factor is neutral.

### 4. Avoidance of Conflict of Laws Factor is Neutral

SynKloud agrees with Dropbox that this factor is neutral.

## V. CONCLUSION

For the foregoing reasons, Dropbox's Motion to Transfer Venue to the Northern District of California should be denied in its entirety.

Dated: December 10, 2019                    Respectfully,

Local Counsel:                              */s/ Deepali Brahmbhatt*
Kevin J. Terrazas (SBN 24060708)           Deepali Brahmbhatt *(Pro Hac Vice)*
kterrazas@clevelandterrazas.com            dbrahmbhatt@onellp.com
CLEVELAND TERRAZAS PLLC                     ONE LLP
4611 Bee Cave Road, Suite 306B             4000 MacArthur Blvd.
Austin, TX 78746                           East Tower, Suite 500
Telephone: (512) 680-3257                  Newport Beach, CA 92660
                                           Telephone: (949) 502-2870
Of Counsel:                                Facsimile: (949) 258-5081
John Lord *(Pro Hac Vice)*
jlord@onellp.com                           *Attorneys for Plaintiff SynKloud*
ONE LLP                                    *Technologies, LLC*

9301 Wilshire Blvd.
Penthouse Suite
Beverly Hills, CA 90210
Telephone: (310) 866-5157
Facsimile: (310) 943-2085

## CERTIFICATE OF SERVICE

     The undersigned certifies that on December 10, 2019 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.


                        */s/ Deepali Brahmbhatt*

                        Deepali Brahmbhatt