# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

SYNKLOUD TECHNOLOGIES, LLC,
          PLAINTIFF,


     v.

DROPBOX, INC.,
          DEFENDANT.

Civil Action No. 6:19-cv-00526-ADA


**JURY TRIAL DEMANDED**


# DEFENDANT DROPBOX, INC.'S OPENING
# CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

I.     Introduction ...........................................................................................................................1

II.    Background .............................................................................................................................1

       A.     The Asserted Patents...............................................................................................1

       B.     Prosecution History of the '6,880 Patent. ..............................................................3

       C.     *Inter Partes* Review of the '526 Patent...................................................................5

              i.     "Storing . . . or Retrieving" ........................................................................7

              ii.    "A Storage Space of Predefined Capacity Assigned Exclusively to a
                     User of the Wireless Device by a Storage Server" ....................................9

III.   Legal Principles ...................................................................................................................10

IV.    The Disputed Claim Terms .................................................................................................11

       A.     Disputed Term: "a server" ('6,880: claims 2, 7-10, 11-17; '686 claims 1-11,
              12-20; '690 claims 1-9, 10-15, 16-20; '195 claims 15-20; '780 claims 9-15;
              '254 claims 9-15). ................................................................................................11

       B.     Disputed Term: "wireless device" ('6,880: claims 2, 7-10, 11-17; '686
              claims 1-11, 12-20; '690 claims 1-9, 10-15, 16-20; '195 claims 15-20; '780
              claims 9-15; '254 claims 9-15). .........................................................................15

       C.     Disputed term: "[allocating/allocate] […] a [first one of the] storage
              space[s] of a predefined capacity" ('6,880: claims 2, 7-10, 11-17, '686
              claims 9, 12-20, '690 claims 1-9, 16-20, '195 claims 15-20) / "configured
              with a storage space of a predefined capacity allocated" ('690 claims 10-
              15). .......................................................................................................................18

       D.     Disputed term: "[store/storing] . . . or [retrieve/retrieving]" ('686 claims 1-
              11, 12-20; '690 claims 1-9, 16-20; '780 claims 9-15; '254 claims 9-15).............23

V.     Conclusion ...........................................................................................................................26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011)..................................................................11

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017).................................................10, 11, 22, 25

*Computer Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1366 (Fed. Cir. 2008)............................................................17, 18

*CVI/Beta Ventures, Inc. v. Tura LP*,
112 F.3d 1146 (Fed. Cir. 1997)..................................................................13

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)............................................................19, 23

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
914 F.3d 1347 (Fed. Cir. 2019)............................................................16, 17

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*,
933 F.3d 1345 (Fed. Cir. 2019)..................................................................13

*Lexion Med., LLC v. Northgate Techs., Inc.*,
641 F.3d 1352 (Fed. Cir. 2011)............................................................10, 17

*MasterMine Software, Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed. Cir. 2017)............................................................11, 19

*Openwave Sys., Inc. v. Apple Inc.*,
808 F.3d 509 (Fed. Cir. 2015)....................................................................18

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................10, 16, 26

*Rembrandt Diagnostics, LP v. Alere, Inc.*,
No. 2019-1595, 2020 WL 1815748 (Fed. Cir. Apr. 10, 2020) .................26

*SightSound Techs., LLC v. Apple Inc.*,
809 F.3d 1307 (Fed. Cir. 2015)............................................................11, 22

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
164 F.3d 1372 (Fed. Cir. 1998)..................................................................10

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed.Cir. 1996).................................................................................................10

## I.      INTRODUCTION

Dropbox, Inc. ("Dropbox") respectfully requests that the Court adopt its proposed claim constructions because they are the only constructions that are fully supported by the claims, the specifications, the file history, and subsequent SynKloud statements during *inter partes* review. Dropbox seeks constructions only where the intended meaning of the terms in dispute is crystal clear from the inventor's or SynKloud's own statements to the U.S. Patent and Trademark Office.  Two of Dropbox's proposed constructions are based on express disclaimers by the inventor during the prosecution of the original application.  The other two are based on express disclaimers and arguments made by current patent owner SynKloud during *inter partes* review of related U.S. Patent 9,098,526 ("'526 patent").

SynKloud's proposed constructions seek to recapture claim scope that was explicitly disclaimed in order to obtain issuance or to preserve the validity of its patents.  Because such a reversal contradicts the principles of claim construction and the strong policy of allowing the public to rely on statements made during prosecution, Dropbox's proposed constructions should be adopted.

## II.     BACKGROUND

### A.      The Asserted Patents.

SynKloud asserts six patents: U.S. Patent Nos. 8,606,880 (the "'6,880 patent"), 9,239,686 (the "'686 patent"), 8,868,690 (the "'690 patent"), 8,856,195 (the "'195 patent"), 9,219,780 (the "'780 patent"), and 10,015,254 (the "'254 patent") (collectively, the "asserted patents").  All six patents are part of the same family and have one named inventor: Sheng Tai Tsao.

The '6,880 patent is the parent of all the other asserted patents.[1]  It was filed on December 4, 2003.  The '690 and '686 patents are continuations of the '6,880 patent. ECF No. 1-9 ('690 patent) at 1:7-8; ECF No. 1-11 ('686 patent) at 1:6-8.  The '195 and '254 patents are continuations of the '690 and '686 patents, respectively.  ECF No. 1-8 ('195 patent) at 1:6-13; ECF No. 1-12 ('254 patent) at 1:6-11.  The '780 patent is a continuation of the '526 patent (not asserted), which is a continuation of the '690 patent.  ECF No. 1-10 ('780 patent) at 1:6-20; *id.* at Cover Page (see paragraph 63).

The asserted patents are directed to providing external storage space for "wireless devices," such as cell phones or personal digital assistants ("PDAs").  *See, e.g.*, ECF No. 1-7 ('6,880 patent) at Fig. 3, 2:23-31 ("Today the wireless users commonly face a problem of lack of storage capacity on their wireless devices such as cell phone or PDA . . . To effectively solve this problem . . . the storage of a server can be used as the external storage for the wireless devices."). The process described by the asserted patents allows users of wireless devices ask a remotely hosted server computer to download data from the web to server computer storage space that has been "allocated" for each wireless device.  *See id.* at Fig. 3, 5:5-35.

First, a user, via a browser on a wireless device, obtains file identification information, such as the file name, associated with one or more files the user wishes to download from the web to an external storage space.  *Id.* at 5:5-20 (describing that a "user accesses a web-page which contains the data name for the downloading"), claims 1, 2, 11; *see also* ECF No. 1-11 ('686 patent) at claim 11 ("The server as recited in claim 1, wherein the download information

---

[1] While each of the patents state they are "continuations" of one another and incorporate the application of the '6,880 patent by reference (ECF No. 1-8 ('195 Patent) at 1:6-17; ECF No. 1-9 ('690 Patent) at 1:7-15; ECF No. 1-10 ('780 Patent) at 1:7-20; ECF No. 1-11 ('686 Patent) at 1:6-20; ECF No. 1-12 ('254 Patent) at 1:6-17), the specifications are not identical in every aspect.  Differences are noted below where relevant to Dropbox's claim construction arguments.

for the file further includes at least the name of the file and the internet protocol ('IP') address of the remote server.").  The wireless device then sends this file identification information to a server, referred to in the patent as a storage server, such that the storage server can download the one or more files directly into the external storage space.  ECF No. 1-7 ('6,880 patent) at 5:21-35.  The external storage space is a partition of physical storage space (e.g., a volume of multiple GB in size) allocated to the user by the storage server.  *Id.* at Fig. 3, 2:33-50.

  **B.**  **Prosecution History of the '6,880 Patent.**

  The '6,880 patent was the first application to be filed and was the first to issue.  It is therefore the direct or indirect parent of every other asserted patent.  Claims 31 and 33 of the application included two of the same terms (emphasized below) that Dropbox proposes to construe:[2]

> Claim 31 (in relevant part):
>
> A method for expanding storage capacity of a ***wireless device***, the method comprising:
> > allocating via ***a server*** a storage space of a predefined capacity for the wireless device, the storage space being remotely located with respect to the wireless device . . .
>
> Claim 33 (in relevant part):
>
> A system for expanding storage capacity of a plurality of ***wireless devices***, the system comprising:
> > ***a server*** configured to:
> > allocate a storage space of a predefined capacity for each of the ***wireless devices***, create a file system for the storage space allocated for the each of the ***wireless device*** . . .

---

[2] For example, asserted claim 2 of the '6,880 patent, as issued, reads in relevant part:
> ***a server*** configured to:
> > allocate a storage space of a predefined capacity for each of the ***wireless devices***, create a file system for the storage space allocated for the each of the ***wireless devices*** . . .

ECF No. 1-7 ('6,880 patent) at claim 2 (emphasis added).

3

Declaration of Gregory Lantier ("Lantier Decl."), Ex. 1 (June 16, 2011 Second Suppl. Amendment in Response to the Office Action of 3/23/2011) at 2-3 (emphasis added).

On July 26, 2011, the Examiner rejected claims 31 and 33 because he found "a server" and "wireless device" were both disclosed in U.S. Patent No. 6,351,776 ("O'Brien").  Lantier Decl., Ex. 2 (July 26, 2011 Final Rejection) at 2-3.  Specifically, the Examiner found the claimed "a server" was disclosed because the X:Drive described in O'Brien is "Internet hard drive space."  *Id.*

In order to distinguish his application from O'Brien's X:Drive, the inventor Mr. Tsao argued that O'Brien did not disclose the claimed "a server" because:

> the X:Drive of ***O'Brien is really a federated group of multiple server computers***, wherein each server computer providing different functionalities to work with other server computers to provide storage service. Therefore, for a same storage service request, X:Drive requires the request being traveling along among multiple server computers to get finally served while instant application only requires one server computer to provide equivalent storage service.

Lantier Decl., Ex. 3 (Sept. 23, 2011 Applicant Remarks) at 7 (emphasis added).

Second, the Examiner found that O'Brien disclosed the claimed "wireless device" because O'Brien disclosed a laptop computer.  Lantier Decl., Ex. 4 (March 23, 2011 Non-Final Rejection) at 14 ("a laptop is a type of wireless device"); Lantier Decl., Ex. 2 (July 26, 2011 Final Rejection) at 2 ("O'Brien discloses a method for expanding storage capacity of a wireless device.").

In order to distinguish his application from O'Brien, Mr. Tsao argued that O'Brien did not disclose external storage for "wireless devices" because, "[i]n respect to the computer history, specially before 2001, it is not proper to call the laptop computer as 'a wireless device'." Lantier Decl., Ex. 3 (September 23, 2011 Applicant Remarks) at 4.

In response to Mr. Tsao's arguments with respect to the claimed "a server" and the claimed "wireless devices," the Examiner withdrew his objections over O'Brien. Lantier Decl., Ex. 5 (June 18, 2013 Non-Final Rejection) at 2 ("Applicant's arguments, see Remarks filed on 09/23/2011, with respect to the rejection(s) of claims [31 and 33] . . . as being anticipated by O'Brien et al. U.S. 6,351,776, have been fully considered and are persuasive."). The application issued as the '6,880 patent on December 10, 2013. ECF No. 1-7 ('6,880 patent) at Cover Page (see paragraphs (45), (21)).

### C. *Inter Partes* Review of the '526 Patent.

As noted above, the '526 patent is not asserted in this action, but it states that it is a continuation of the asserted '690 patent and the asserted '780 patent claims priority to it. Lantier Decl., Ex. 6 ('526 patent) at 1:6-8; ECF No. 1-10 ('780 patent) at Cover Page (see paragraph (63)). As such, the '526 patent specification and claims are related to the same invention as claimed in the asserted patents, and share many similar or identical terms. A chart comparing challenged claim 11 of the '526 patent with claims of the asserted '6,880 and '780 patents illustrates these similarities (which are not limited to these illustrative claims):[3]

| '526 Patent, Claim 11 | '6,880 Patent, Claim 11 | '780 Patent, Claim 9 |
|---|---|---|
| *wireless device* | *wireless devices* | *wireless device* |
| *a storage server* | *a server* | *A server* |
| *storage space of predefined capacity assigned exclusively by a storage server to a user of the wireless device* | *allocate a storage space of a predefined capacity for each of the wireless devices* | *allocating exclusively, via the storage pool, a first one of the storage spaces to a user of a first wireless device* |
| *storing a data object therein or retrieving a data object* | *updating the file system for storing a file therein* | *storing data therein or retrieving data therefrom* |

[3] The claims of the other asserted patents employ similar terms. *See* ECF No. 1-8 ('195 patent) at claim 15; ECF No. 1-9 ('690 patent) at claim 1; ECF No. 1-11 ('686 patent) at claim 12; ECF No. 1-12 ('254 patent) at claim 9.

| '526 Patent, Claim 11 | '6,880 Patent, Claim 11 | '780 Patent, Claim 9 |
|---|---|---|
| *therefrom* | | |

In September 2019, Unified Patents Inc. ("Unified") filed a petition ("Petition")

requesting *inter partes* review ("IPR") of the '526 patent on the grounds that (1) a combination

of prior art references "Prust" and "Major" rendered certain claims of the '526 patent obvious

and (2) a combination of prior art references "Chaganti" and "Major" rendered all claims of the

'526 patent obvious.  Lantier Decl., Ex. 7, (IPR2019-01655, Petition) at 1.[4]

In its Petition, Unified made two arguments with respect to the Prust prior art reference

that are relevant to the terms now before the Court for construction.  ***First***, Unified argued that

"storing … or retrieving" should mean "at least one of . . . storing . . . *or* . . . retrieving."  *See id.*

at 6 (arguing that the term "comprises storing a data object therein or retrieving a data object

therefrom" in the '526 patent should be construed to mean "the operation includes at least one of

(i) storing a data object therein *or* (ii) retrieving a data object therefrom.") (emphasis in original).

Unified argued that under this construction the prior art reference "Prust" satisfied the "storing or

retrieving" limitation of the '526 patent because Prust disclosed "retrieving a data object."  *Id.* at

30.

***Second***, Unified argued that Prust taught the element in the '526 patent of "establish a

wireless link for the wireless device access to a storage space of a predefined capacity assigned

exclusively to a user of the wireless device by a storage server."[5]  *Id.* at 23.  Unified argued that

Prust taught this limitation in part because it taught "allocating" storage to the user, which a

---

[4] IPR2019-01655 is hereinafter referred to as the "'526 IPR."

[5] While not identical to the term Dropbox proposes to construe, very similar language is used in
the specifications of the asserted patents to explain how the allocating limitation is met.  *E.g.*,
ECF No. 1-11 ('686 patent) at 2:53-55 ("a user of each of the wireless devices can be exclusively
assigned for access to a specific storage volume in the server unit.").

person of skill in the art would understand as "reserv[ing] a sufficient amount of memory, *i.e.* a predefined capacity." *Id.* at 25.

SynKloud contested both of those arguments in its January 2, 2020 Patent Owner Preliminary Response ("POPR") and made additional arguments relevant to claim construction in its June 12, 2020 Patent Owner Response ("POR").

### i. "Storing . . . or Retrieving"

With regard to the proposed construction of "comprises ***storing*** a data object therein ***or retrieving*** a data object therefrom," SynKloud argued in its POPR that Petitioner's construction did not "provide for a cardinal feature of the invention—accessing and enjoying the downloaded data stored on a remote server" because "Petitioner's 'either this or that' approach to construction also permits a construction that characterizes the invention as not embracing the ability 'to download a data'." Lantier Decl., Ex. 8 (POPR) at 10. SynKloud argued that Petitioner's construction was wrong because:

> ***It's easy to see the inventor wrote the disclosure as embracing and calling for both downloading (storing) <u>and</u> accessing (retrieving) information of interest***. Were it not so, ***the expressed aim of the invention – to provide for increased storage of data on a remote server instead of the wireless device itself, and provide for the smooth retrieval of that data*** – would be otherwise.

*Id.* (emphasis added). SynKloud further argued that it was improper to construe the term to encompass at least one of either storing or retrieving, rather than requiring both:

> [T]he entire specification of the '526 Patent focuses on single task, providing a smooth system which enhances storage capacity of a user of a wireless device by providing for streamlined ability to download, store AND retrieve data objects to and from that storage space. Nowhere does the '526 Patent suggest or consider the invention may be satisfied by simply storing information but not retrieving it, or only retrieving but not storing information. PO submits the specification of the '526 Patent makes it clear – the patent claims are directed to a system which provides for both downloading and retrieving.

*Id.* at 13 (all capital letter "AND" in original).

> [T]he clear intent of the inventor, as expressed in the specification, is that the claim phrase 'Comprises storing a data object (in the storage space) or retrieving a data object therefrom' should be construed to require both 'storing a data object <u>and</u> retrieving a data object'.

*Id.* at 15 (underlining in original).

The Board instituted review on March 19, 2020, declining to construe the claim limitation "storing a data object . . . or retrieving a data object" because Petitioner demonstrated a reasonable likelihood that the claims would be unpatentable under either party's construction. Lantier Decl., Ex. 9 (Institution Decision) at 7-8.

The Patent Owner responded on June 12, 2020, requesting that the PTAB resolve construction of the claim, and providing support for its construction that both storing and retrieving are required. Lantier Decl., Ex. 10 (POR) at 7-8. "[T]he claimed invention requires both storing a data object and retrieving a data object. . . . the inventor . . . clearly intended to claim both a device and software where ***the act of storing a data object is as necessary as the act of retrieving a data object – both are required***." *Id.* at 8.

SynKloud further argued that interpreting "storing a data object therein or retrieving a data object therefrom" as requiring only one of storing or retrieving would violate the tenet of claim construction against rendering a limitation superfluous: "[T]o interpret the claim to conclude that the device and software invention disclosed is satisfied by either storing or retrieving . . . contravenes a fundamental rule of claim construction, in that it renders the 'storing' aspect of the claim superfluous and unnecessary." *Id.* at 8.

Therefore, SynKloud reiterated, "the claim term 'storing a data object therein or retrieving an object therefrom' should be construed to indicate, as one of skill in the art would have understood it, to call for that device or software to provide for storage and retrieval." *Id.* at 9.

### ii.  "A Storage Space of Predefined Capacity Assigned Exclusively to a User of the Wireless Device by a Storage Server"

In its POPR, SynKloud also argued that Prust did not disclose the limitation contained in the '526 patent of "a storage space of predefined capacity assigned exclusively to a user of the wireless device by a storage server."  Lantier Decl., Ex. 8 (POPR) at 27.  SynKloud wrote:

> Predefined means defined before, in this case, allocating storage to users of the storage space. . . . *While Petitioner asserts . . . 'reserve a sufficient amount of memory' as satisfying the claim limitation of a predefined capacity, no person of skill in the art would confuse the two*. The capacity assigned exclusively to each user must be assigned in advance, that is, prior to allocation – a far cry from reserving storage that may be necessary – 'predefined capacity' is not, and would not be confused by POSITA as, sufficient reserved storage."

*Id.* at 27-28 (emphasis added).  SynKloud further contended that neither Prust nor Major taught "that the storage capacity in a server be of a defined size set by the server before storage is allocated to the users.  Again, this requirement is an essential and recited characteristic of the claims."  *Id.* at 17.

SynKloud distinguished another limitation[6] of its claims from Prust on the basis that Prust only identified "virtual storage areas," which SynKloud claimed was not how one of skill in the art would understand the '526 patent's claims:

> The Prust reliance on virtual storage areas[] is different, if not diametrically opposed, to the storage device requirement of Claims 3 and 20.  Quite simply, a virtual storage device is not a real storage device, and assigning a virtual storage device area is not assigning space on an actual storage device.

*Id.* at 36.  In its POR, SynKloud elaborated on this argument, arguing that "[t]he '526 Patent does not describe virtual devices, storage servers or areas . . . A virtual storage area is what a user requests.  An actual storage area is allocated on approval."  Lantier Decl., Ex. 10 (POR) at 30-31.

---

[6]  The limitation at issue was "storage server controls a plurality of storage devices, one of the storage devices being configured with the storage space assigned exclusively to the user." Lantier Decl., Ex. 8 (POPR) at 35.

## III.    LEGAL PRINCIPLES

"[I]n interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995)); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005); *Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1356 (Fed. Cir. 2011) ("[t]he customary meaning of a claim term . . . should be harmonized . . . with the intrinsic record.").

"The prosecution history limits the interpretation of the claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) (quoting *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.1995)).  This principle also applies to statements made during post-grant proceedings, such as *inter partes* review.  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359-60 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding can be relied on to support a finding of prosecution disclaimer during claim construction" in order to "promote[] the public notice function of the intrinsic evidence and protect[] the public's reliance on definitive statements made during IPR proceedings.") (internal quotations omitted).  "Regardless of when the statements are made during the proceeding, the public is entitled to rely on those representations when determining a course of lawful conduct, such as launching a new product or designing around a patented invention." *Id.* at 1362 (internal quotations omitted).  Moreover, statements made to the Patent Office are relevant even if the Patent Office ultimately disagrees with them.  *See Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (disavowal of claim scope in reexamination relevant regardless of whether Examiner

disagreed with argument, and argument was ultimately unnecessary to overcome prior art reference).

Additionally, claims must be interpreted consistently "where multiple patents derive from the same parent application and share many common terms." *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) (internal quotations omitted); *see also MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1311 n.2 (Fed. Cir. 2017) ("[T]he meaning of claim terms in one patent can be informed by statements made during prosecution of other patents in the same family.  We have explained, for example, that 'past and future prosecution of related patents may be relevant to the construction of a given claim term.'") (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343 n.5 (Fed. Cir. 2015)).

## IV.   THE DISPUTED CLAIM TERMS

Dropbox's proposed claim constructions come directly from the patents' specifications and the clear statements made to the Patent Office.  SynKloud's proposed constructions repeatedly ignore or contradict this intrinsic evidence, seeking to recapture subject matter that was expressly distinguished from the alleged invention.

### A.   Disputed Term: "a server" ('6,880: claims 2, 7-10, 11-17; '686 claims 1-11, 12-20; '690 claims 1-9, 10-15, 16-20; '195 claims 15-20; '780 claims 9-15; '254 claims 9-15).

| Term | Dropbox's Construction | SynKloud's Construction |
|------|------------------------|-------------------------|
| "a server" | "one server computer" | "one or more servers" |

The parties dispute whether the claim term "a server" is limited to one server computer (as Dropbox proposes) or can encompass multiple server computers (as SynKloud proposes). Dropbox's proposed construction is the correct construction because (1) the inventor expressly

disclaimed coverage of "multiple server computers" during prosecution, and (2) the patents' specifications support that interpretation of the claim language.

**First,** during prosecution of the '6,880 patent, Mr. Tsao expressly disclaimed servers consisting of multiple server computers from the claimed "a server." Mr. Tsao told the Patent Office that "a server," as used in the claims and the specification, meant "*a* computer," and not "*multiple* server computers."

Mr. Tsao drew this distinction in order to avoid the prior art O'Brien patent. The patent Examiner had issued a final rejection because he found that O'Brien's disclosure of "Internet hard drive space that is allocated to an individual user," satisfied the claim limitation of "a server." Lantier Decl., Ex. 2 (July 26, 2011 Final Rejection) at 2-3.

In order to distinguish his application from O'Brien, Mr. Tsao argued that "while [the] *instant application only requires one server computer*," O'Brien "is really a federated *group of multiple server computers* . . . providing different functionalities to work with other server computers to provide storage service" and therefore did not disclose the claimed "a server." Lantier Decl., Ex. 3 (Sept. 23, 2011 Applicant Remarks) at 7 (emphasis added).

Mr. Tsao, therefore, expressly told the Patent Office that "a server" as claimed in the '6,880 patent covers only "one server." In response, the Examiner withdrew his objections: "Applicant's arguments, see Remarks filed on 09/23/2011, with respect to the rejection(s) of claims [31 and 33] . . . as being anticipated by O'Brien et al. U.S. 6,351,776, have been fully considered and are persuasive." Lantier Decl., Ex. 5 (June 18, 2013 Non-Final Rejection) at 2.

SynKloud cannot change the definition the inventor adopted to obtain issuance of his patent because that definition is now inconvenient in litigation. *See Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1352–53 (Fed. Cir. 2019) ("[A]ny explanation, elaboration,

or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented.") (internal quotations omitted); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("[T]hrough statements made during prosecution … an applicant … may commit to a particular meaning for a patent term, which meaning is then binding in litigation."). Because Mr. Tsao clearly distinguished "a server" from "multiple server computers" and "a federated group of multiple server computers," in order to overcome the O'Brien reference during prosecution, SynKloud should be held to that definition now, and Dropbox's construction should be adopted.

Dropbox's proposed construction is also consistent with the patents' specifications. Figure 2 (which the inventor described in his September 23, 2011 Office Action Response at 6 as depicting "***a server computer*** equipped with storage devices" (emphasis added)) depicts a single box labeled "server":

13



Fig. 2

ECF No. 1-7 ('6,880 patent) at Figure 2; *see also id.* at Figure 1.

Nothing in Figure 2, or anywhere else in the patents' specifications, expressly discloses that multiple storage servers can interact to form the claimed server. Even when more than one storage server is depicted, each server is depicted and described as independently providing storage for multiple wireless devices. *See* ECF No. 1-7 ('6,880 patent) at Figure 2 (showing wireless devices, plural), Figure 4 (showing multiple storage servers, a control management station, and multiple wireless devices), 2:4-7 (describing in FIG. 4 that "*each* IP storage server provides a file system as external storage for each of the wireless devices") (emphasis added).

Because Mr. Tsao explicitly narrowed his alleged invention to claim "one server computer" in order to overcome a prior art reference claiming a group of server computers, and because the claim language and specifications are clearly consistent with "one server computer," Dropbox's construction should be adopted.

**B.    Disputed Term: "wireless device" ('6,880: claims 2, 7-10, 11-17; '686 claims 1-11, 12-20; '690 claims 1-9, 10-15, 16-20; '195 claims 15-20; '780 claims 9-15; '254 claims 9-15).**

| Term | Dropbox's Construction | SynKloud's Construction |
|---|---|---|
| "wireless device" | "a cell phone, PDA, or similar device; not a laptop, desktop, or server computer" | Plain and ordinary meaning includes a laptop, desktop, or server computer |

The parties disagree as to whether "wireless device," as used in the claims, can include laptop, desktop, or server computers.  Dropbox's construction—that those types of computers are *not* considered a "wireless device"—is the one clearly adopted in the '686 and '780 patents' specifications and embraced by the inventor during prosecution of the first-filed '6,880 patent. SynKloud's proposed construction should be rejected because it seeks to recapture subject matter that the inventor expressly distinguished from his invention.

*First*, the specifications of the asserted patents support Dropbox's proposed construction because they make clear that "wireless devices" are devices such as cell phones or PDAs.  For example, each specification explains in identical or nearly identical language that "wireless users commonly face a problem of lack of storage capacity configured on their wireless devices *such as cell phone or PDA, which are usually limited to 256MB for PDA and much less for cell phone*."  ECF No. 1-7 ('6,880 patent) at 2:23-26 (emphasis added); *see also* ECF No. 1-8 ('195 patent) at 2:30-33; ECF NO. 1-9 ('690 patent) at 2:26-29; ECF No. 1-10 ('780 patent) at 2:40-43; ECF No. 1-11 ('686 patent) at 2:39-42; ECF No. 1-12 ('254 patent) at 30-34.  The Abstracts of

15

several of the patents provide further support for Dropbox's construction.  For example, they explain that: "Traditionally, wireless device, *such as cell phone or personal data assistant device (PDA)*, has relatively smaller storage capacity."  ECF No. 1-10 ('780 patent) at Abstract (emphasis added); ECF No. 1-11 ('686 patent) at Abstract; ECF No. 1-12 ('254 patent) at Abstract.[7]

*Second*, the specifications of the '686 and '780 patents expressly distinguish a "wireless device" from a laptop, desktop, or server computer.  "Storage system always is a critical part of a computing system regardless of [whether] the computing system is a server, a laptop or desktop computer, *or a wireless device such as cell phone or personal data assistant device* ('PDA').")).  ECF No. 1-11 ('686 patent) at 1:29-32 (emphasis added); *see also* ECF No. 1-10 ('780 patent) at 1:29-32.  This language makes clear that servers, laptops, or desktop computers are *not* wireless devices.

SynKloud's argument that the plain and ordinary meaning of "wireless device" includes a laptop, desktop or server computer should therefore be rejected.  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582); *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019) ("Claim terms must be given the ordinary and customary meaning that the term would have to a person of ordinary skill in the art when read in the context of the specification and prosecution

---

[7] The '195 patent similarly explains, "to meet the needs for storing larger volume personal information for user of wireless device, it is desire to provide extra storage space to the wireless device such as for *cell phone or personal assistant device (PDA)* etc due to the limited storage space that the wireless device has." ECF. No. 1-8 ('195 patent) at Abstract (emphasis added); *see also* ECF No. 1-9 ('690 patent) at Abstract ("to meet the needs for storing larger volume personal information for user of wireless device, it is desire to provide extra storage space to the wireless device such as for *cell phone* etc due to the limited storage space that the wireless device has.") (emphasis added).

history."); *see also Lexion Med.*, 641 F.3d at 1356 ("[t]he customary meaning of a claim term is not determined in a vacuum and should be harmonized, to the extent possible, with the intrinsic record, as understood within the technological field of the invention.").  Here, even if the plain meaning of "wireless device" may sometimes include server, laptop, and desktop computers, that meaning does not apply where the inventor has ***contrasted*** those computing systems with "wireless device[s]."  *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1378-79 (Fed. Cir. 2008) (where "the specification contrasts the microcomputer system with a laptop computer" and "the Background of the Invention distinguishes microcomputers from laptop computers," affirming construction of "portable computer" to exclude laptop computers).

*Third*, during prosecution of the first-filed '6,880 patent, Mr. Tsao expressly disclaimed laptops from the definition of "wireless device" in order to overcome the O'Brien reference, which disclosed providing storage for a laptop.  In order to avoid this reference, Mr. Tsao distinguished it by taking the position that a laptop computer is not "a wireless device" for the purpose of his application.  Lantier Decl., Ex. 3 (Sept. 23, 2011 Applicant Remarks) at 4 ("In respect to the computer history, specially before 2001, ***it is not proper to call the laptop computer as 'a wireless device'***.") (emphasis added).  This claim narrowing was persuasive to the patent Examiner, and he withdrew his rejections over O'Brien.  Lantier Decl., Ex. 5 (June 18, 2013 Non-Final Rejection) at 2.

As in *Computer Docking Station Corp.*, here the inventor "clearly and unambiguously disavowed . . . laptops" in order to avoid a prior art reference, and that disavowal is supported by the specifications and consistent with the claim language.  519 F.3d at 1376-78.  Therefore, prosecution disclaimer prevents SynKloud from recapturing that scope to prove infringement. *Id.*; *see also Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 517 (Fed. Cir. 2015) ("[I]t is

17

difficult to envisage how, in light of the repeated disparagement of mobile devices with 'computer modules' discussed above, one could read the claims of the patents-in-suit to cover such devices.").  And, if a laptop computer is not a wireless device, then surely desktop and server computers are not.  As with "a server," SynKloud cannot change the definition Mr. Tsao told the Patent Office was the correct construction in order to have his first-filed patent issue, and then expressly included in the specification of two later-filed patents.

        **C.**      **Disputed term: "[allocating/allocate] […] a [first one of the] storage space[s] of a predefined capacity" ('6,880: claims 2, 7-10, 11-17, '686 claims 9, 12-20, '690 claims 1-9, 16-20, '195 claims 15-20) / "configured with a storage space of a predefined capacity allocated" ('690 claims 10-15).**

| Term | Dropbox's Construction | SynKloud's Construction |
|---|---|---|
| "[allocating/allocate] […] a [first one of the] storage space[s] of a predefined capacity" | "allocate, not simply reserve, […] a defined size of real storage space on the server."<br><br>"allocating, not simply reserving, […] a first one of the defined sizes of real storage space on the server." | "[reserving/reserve] [….] a [first one of the] storage space[s] of a capacity defined in advance" |
| "configured with a storage space of a predefined capacity allocated" | "configured with a defined size of real storage space on the server allocated, not simply reserved" | "organized a storage space of a capacity defined in advance" |

      The fundamental dispute with regard to these related terms is whether they require that a defined amount of real storage space on the server be set aside regardless of whether it is eventually used by the user device.  Dropbox argues that, if a user is allowed up to 50 GB of storage, a specific 50 GB block on the server has to be set aside for that user in advance.  SynKloud argues that this element is satisfied so long as there is room on the server to store 50 GB of data if a user ever chooses to do so.  Dropbox's proposed constructions are confirmed by

(1) statements SynKloud made in response to an IPR challenge to U.S. Patent No. 9,098,526,[8] and (2) the patents' specifications.  SynKloud's construction, meanwhile, contradicts those statements and the specifications.  Therefore, the Court should adopt Dropbox's construction.

*First*, SynKloud's own statements in the IPR proceeding for the non-asserted '526 patent cannot be reconciled with its position in this case.  In its January 2, 2020 POPR, SynKloud argued that simply reserving storage space was insufficient to meet the claim limitation.  Lantier Decl., Ex. 8 (POPR) at 26-27.  Specifically, Unified in its Petition argued that Prust disclosed allocating storage to the user by reserving a sufficient amount of memory on a server.  Lantier Decl., Ex. 7 (Petition) at 25.  In an attempt to overcome Prust, SynKloud stated unequivocally that "no person of skill in the art would confuse" "'reserve a sufficient amount of memory' as satisfying the claim limitation of a predefined capacity."  Lantier Decl., Ex. 8 (POPR) at 27-8 (arguing that Prust in view of Major did not teach the claimed "predefined capacity" recited in the challenged '526 SynKloud patent).  Just six months later, SynKloud is advocating the exact opposite position before this Court.

*Second*, SynKloud also argued in its POPR that the allocation of a storage space of a predefined capacity requires that a defined size of real (*i.e.*, not virtual) storage is allocated.

---

[8] As noted above, the '526 patent is not asserted in this case, but is part of the same family as the six asserted patents.  The '526 patent is a continuation of the asserted '690 patent, which is a continuation of the asserted '6,880 patent.  The asserted '780 patent is a continuation of the '526 patent.  The prosecution history of a continuation patent is part of the intrinsic evidence relevant to construction of the claims of other patents stemming from the same application.  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348, 1353 (Fed. Cir. 2005), a*brogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 134 S. Ct. 2120 (2014); *see also MasterMine Software*, 874 F.3d at 1311 n.2 ("the meaning of claim terms in one patent can be informed by statements made during prosecution of other patents in the same family.  We have explained, for example, that 'past and future prosecution of related patents may be relevant to the construction of a given claim term.'") (citing *Teva Pharm.*, 789 F.3d at 1343 n.5).  Therefore, statements made in an IPR to defend the validity of the '526 patent are directly relevant to the Court's analysis of the claims of the asserted patents.

First, SynKloud argued that a "predefined capacity" required that the "storage capacity in a server be of a defined size set by the server."  *Id.* at 17.  Second, in an attempt to overcome the Prust reference's description of "virtual storage areas," SynKloud argued that when the '526 patent described assigning "storage space[s]" it was referring to "assigning space on an actual storage device" as opposed to assigning "a virtual storage device area" because "a virtual storage device is not a real storage device."  *Id.* at 35-36 ("The Prust reliance on virtual storage areas[] is different, if not diametrically opposed, to the storage device requirement of Claims 3 and 20. Quite simply, a virtual storage device is not a real storage device, and assigning a virtual storage device area is not assigning space on an actual storage device."); *see also* Lantier Decl., Ex. 10 (POR) at 31 (attempting to distinguish over Prust by arguing that Prust does not teach an "actual storage area [that] is allocated on approval").

SynKloud's statements in the '526 IPR clearly exclude virtual storage areas from the claimed "storage space … of a predefined capacity" and instead limit it to only defined sizes of real storage space on the server.  Dropbox's constructions, unlike SynKloud's, are consistent with SynKloud's statements in the '526 IPR.

**Third,** Dropbox's construction is consistent with the patents' specifications.[9]  The '6,880 patent specification explains that allocation of a predefined storage space includes "partition[ing]" "the storage system (10) of the server (3) … into multiple storage volumes (11) … [and] in such way that each of the wireless devices can be allocated with a storage volume having a desired size."  ECF No. 1-7 ('6,880 patent) at 3:26-31.  The specification further details how each server computer is partitioned into certain volumes of storage and notes that a disk

---

[9] The claim language itself is consistent with Dropbox's constructions.  For example, claim 2 of the '6,880 patent requires first the "allocat[ion] of a storage space of a predefined capacity for each of the wireless devices," and next the step of "creat[ing] a file system for the storage space allocated for the each of the wireless devices."  ECF No. 1-7 ('6,880 patent) at claim 2.

drive of a certain storage capacity can support a certain number of users.  *See, e.g.*, *id.* at 2:34-42 ("[E]ach server unit . . . ***partitions*** its storage system into volume and each of the volumes will have multiple GB in size.  Therefore, each user of the wireless devices can be exclusively assigned and access a specific storage volume.  For example, if we need to provide each user a 4 GB storage space, ***then a 160 GB disk drive can support 40 users. Therefore, a 4096 GB storage system on the server unit can support a total of 1024 wireless devices for users.***") (emphasis added); *id.* at 4:19-22 ("[T]he console support software … of the server … performs the actual storage partition to divide the entire storage into multiple small volumes."); *see also* ECF No. 1-11 ('686 patent) at 2:50-55 ("First . . . each server unit . . . ***partition its storage system into volumes***, such that each of the volumes will have multiple GB in size.  Therefore, a user of each of the wireless devices can be exclusively assigned for access to a specific storage volume in the server unit.") (emphasis added).  This language supports Dropbox's construction, because it shows that the storage space is broken up into smaller volumes, which are individually allocated to particular wireless device users, instead of merely ensuring that there is sufficient total storage on the server by reserving an unspecified portion of the server for the user to use.

As another example, Figure 3 illustrates "the allocated file system" (ECF No. 1-7 ('6,880 patent) at 5:33) at 11:



The allocated file system here consists of blocks of space of a particular size (4G) on the storage system of the server, which are assigned to particular users (*e.g.*, p1, p2, p3). Therefore, it is not enough that a capacity is defined in advance and reserved, as SynKloud's construction suggests; the claims require allocating users *a particular block* of real storage space that has been defined by the server.

The claim terms here should be interpreted consistently with SynKloud's statements in the '526 IPR to protect the public's reliance on those statements. *Aylus Networks*, 856 F.3d at 1359-60. The claims should also be interpreted consistently across patents in the same family. *SightSound Techs.*, 809 F.3d at 1316. For those reasons, and because the specification and SynKloud's arguments during the '526 IPR support the construction proposed by Dropbox, the Court should adopt Dropbox's proposed construction.

**D.    Disputed term: "[store/storing] . . . or [retrieve/retrieving]" ('686 claims 1-11, 12-20; '690 claims 1-9, 16-20; '780 claims 9-15; '254 claims 9-15).**

| Term | Dropbox's Construction | SynKloud's Construction |
|------|------------------------|-------------------------|
| "[store/storing] . . . or [retrieve/retrieving]" | "[store/storing] … and [retrieve/retrieving]" | No construction needed |

The parties disagree as to whether the invention requires both storing ***and*** retrieving data (Dropbox's proposed construction) or whether it also encompasses storing [without retrieving] or retrieving [without storing] alone.  Dropbox's construction should be adopted because (1) SynKloud disclaimed the broader construction to defend against the IPR challenge to the '526 patent and (2) the specifications clearly require both storing ***and*** retrieving.  Once again, SynKloud seeks to recapture subject matter that it previously disclaimed.

***First***, SynKloud expressly adopted Dropbox's proposed construction and disclaimed its current proposed construction in the '526 IPR.[10]  In that IPR, Unified construed the claim term "comprises storing a data object therein or retrieving a data object therefrom," as requiring that "the operation includes ***at least one*** of (i) storing a data object therein or (ii) retrieving a data object therefrom."  Lantier Decl., Ex. 7 (Petition) at 6 (emphasis added).  SynKloud vehemently disagreed that the invention encompasses just one of storing or retrieving.

SynKloud first argued that Unified's construction should be rejected because it does "not provide for a ***cardinal feature of the invention –accessing and enjoying the downloaded data stored on a remote server***."  Lantier Decl., Ex. 8 (POPR) at 10 (emphasis added).  In support of this argument, SynKloud pointed out that the specification discloses the ability of the user to retrieve data, such as video or music, stored on the server.  *Id.* at 9 ("To characterize the

---

[10] As discussed above, SynKloud's arguments in that IPR are part of the prosecution history of the '526 patent, which issued from the same application as the asserted patents and constitutes intrinsic evidence.  *Datamize*, 417 F.3d at 1348, 1353.

invention of the '526 Patent as one which might allow one to store data in a remote server – but NOT retrieve it for use [–] ignores the entire point of the invention as set forth at Col. 5, ll., 33– 37 which provides that a user can: 'Retrieve and play multimedia file data file such as video or music stored in the assigned storage volume (11) located on the server.'").  SynKloud also argued that Unified's construction could exclude the downloading steps of the invention, which is a key part of the invention as described in the specification.  *Id.* at 10 (arguing the specification "embrac[es] the ability 'to download a data from a remote web server (15) into the file system on the assigned storage volume (11) in the external storage system (10) on the server (3).'").  From this evidence in the specification, SynKloud argued, "*[i]t's easy to see* the *inventor wrote the disclosure as embracing and calling for* __*both*__ *downloading (storing) and accessing (retrieving) information of interest*. Were it not so, the *expressed aim of the invention – to provide for increased storage of data on a remote server instead of the wireless device itself, and provide for the smooth retrieval of that data* – would be otherwise." *Id.* (emphasis added).

SynKloud then expressly argued that "store AND retrieve" were both required and that "*[n]owhere does the '526 Patent suggest or consider the invention may be satisfied by simply storing information but not retrieving it, or only retrieving but not storing information*.  PO [Patent Owner] submits the specification of the '526 Patent makes it clear – the patent claims are directed to a system which provides for both *downloading* __*and*__ *retrieving*." *Id.* at 13 (emphasis added).

SynKloud reiterated its position just last month in its June 12 POR: "*[T]he operation of the claimed invention requires both storing* a data object *and retrieving* a data object. . . . the inventor . . . clearly intended to claim both a device and software where *the act of storing a data object is as necessary as the act of retrieving a data object – __both are required.__*"

Lantier Decl., Ex. 10 (POR) at 8 (emphasis added).  To allow an either/or interpretation, SynKloud emphasized, would not only be contrary to Mr. Tsao's intent, but would render superfluous the "storing" function of the invention.  *Id.* at 8-9.

SynKloud could not have made its position as to the intended scope of the claim language any clearer.  Dropbox adopts SynKloud's construction from its POPR and POR nearly word-for-word:

> the claim term 'storing a data object therein or retrieving an object therefrom' should be construed to indicate, as one of skill in the art would have understood it, to call for that device or software to provide for ***storage and retrieval***.

*Id.* at 9 (emphasis added); *see also* Lantier Decl., Ex. 8 (POPR) at 9-13.  That proposed construction should be adopted.  Because SynKloud's proposed construction in this litigation is the exact opposite of the construction it is currently arguing for in the '526 IPR, it should be rejected.  *Aylus Networks*, 856 F.3d at 1360 ("Extending the prosecution disclaimer doctrine to IPR proceedings will ensure that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers.").

***Second***, Dropbox's construction is supported by the patents' specifications.  The patents describe both passing from the remote site to the storage system (i.e., storing) and from the storage system to the wireless devices (i.e., retrieving).  *See, e.g.*, ECF No. 1-7 ('6,880 patent) at 5:3-35 (describing storing data by downloading data from a remote site), 5:36-47 ("a user of the wireless device (1 of FIG. 2) can use the browser to ***retrieve*** and play multimedia data file such as video or music ***stored*** in the allocated storage volume (10 of FIG. 2) located on the server (3 of FIG. 2)," or "***retrieve*** data file from the allocated file system of the allocated storage volume (11 of FIG. 2) on the server (3 of FIG. 2).") (emphasis added).

The patents' specifications therefore are consistent with the construction proposed by SynKloud in the '526 IPR that both storing **and** retrieving data are necessary.  *See Phillips*, 415 F.3d at 1315 (the specification "is the single best guide to the meaning of a disputed term.") (internal citation omitted); *Rembrandt Diagnostics, LP v. Alere, Inc.*, No. 2019-1595, 2020 WL 1815748, at *4-9 (Fed. Cir. Apr. 10, 2020) (rejecting construction that excluded the preferred embodiment of invention as depicted in the drawings).

## V.     CONCLUSION

For all four of the contested claim terms, SynKloud seeks to renege positions taken before the Patent Office to obtain or preserve the validity of its patents.  Dropbox merely asks the Court to hold SynKloud to those representations.  Accordingly, Dropbox respectfully requests that the Court adopt Dropbox's proposed claim constructions.

Dated: July 2, 2020

OF COUNSEL:

Gregory H. Lantier (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE**
  **& DORR LLP**
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6327
Email: gregory.lantier@wilmerhale.com

Liv Herriot (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE**
  **& DORR LLP**
950 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 858-6000
Email: liv.herriot@wilmerhale.com

Monica Grewal (*Pro Hac Vice*)
**WILMER CUTLER PICKERING HALE**

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, TX 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

Sven Stricker
Texas State Bar No. 24110418
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, TX 78701
Tel: (512) 495-6464
Email: sven.stricker@kellyhart.com

*Attorneys for Dropbox, Inc.*

**& DORR LLP**
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Email: monica.grewal@wilmerhale.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 2, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5.

*/s/ J. Stephen Ravel*
J. Stephen Ravel